Citation Nr: 1607900 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-47 497 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for a psychiatric disorder, to include adjustment disorder with depressed mood and depression. 


REPRESENTATION

Veteran represented by: Jan Dils, Esq. 


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

A. N. Nolley, Associate Counsel 

INTRODUCTION

The Veteran served on active duty from February 1979 to August 1985. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. 


REMAND

The Veteran contends that his psychiatric disorder is related to his active military service. He asserts that he has had mood and depression issues since he experienced a traumatic event during service. 

At the December 2012 hearing before the Board, the Veteran testified that during his military service he was stationed in the demilitarized zone in Korea. His military duties during that time involved going out into small groups to locate enemy camps. While on such missions, the Veteran had to sleep in foxholes. The Veteran alleged that during one such mission, he awakened from a foxhole and observed a fellow serviceman beside him with his throat cut and killed. He then reported the incident to the guard sergeant. 

In March 2013, the Board remanded this claim to the RO for additional development. The Board finds that not all of its remand directives were complied with, and thus, an additional remand is required. See Stegall v. West, 11 Vet. App. 268 (1998). 

In an October 2004 VA treatment report the Veteran identified the person killed during the in-service event as "Kenny." When asked to recall what unit he was with in Korea, the Veteran testified that "it was 22 - - triple deuce I think." The Veteran's service personnel records indicated that he completed three years of foreign duty service. While stationed in Germany from November 1980 to November 1982, the Veteran's unit assignment was the 2nd Battalion, 22nd Infantry. While stationed in Korea from April 1984 to April 1985, the Veteran's unit assignment was 1/17th 2nd Infantry Division. 

In the March 2013 Board remand, the RO was instructed to forward information regarding the Veteran's alleged stressor to the Joint Services Records Research Center (JSRRC) or any other appropriate source, to verify the Veteran's alleged in-service stressor. The RO contacted the JSRRC, and the JSRRC responded that they were unable to locate any unit records pertaining to the 1st Battalion, 27th Infantry, for the calendar year 1985. The record does not indicate that the JSRRC attempted to locate unit records of the 1/17th 2nd Infantry Division between April 1984 and April 1985 in Korea, the unit assignment and time period reflected in the Veteran's service personnel records. Therefore another request for unit records from the JSRRC or another appropriate source is required. 

The RO also requested investigative reports from the U.S. Army Crime Records Center. The request indicated that the Veteran's unit assignment was "E 1/27th 2nd Inf. Div." and the date of the incident was March 1, 1985. In a September 2015 response, the U.S. Army Crime Records Center asked for more details regarding the Veteran's location in Korea. The RO sent a letter to the Veteran in September 2015 requesting the city, province, and base name in Korea where he was stationed at the time of the incident. The Veteran did not provide a response. The record does not indicate that the U.S. Army Crime Records Center request included a search for investigative reports of the 1/17th 2nd Infantry Division between April 1984 and April 1985, the unit assignment and time period reflected in the Veteran's service personnel records. However, unit history records from the JSRRC, or another appropriate source could shed light on the Veteran's specific location in Korea. 

Accordingly, the case is remanded for the following action:

1. The RO must contact the Veteran and afford him another opportunity to identify the city, province, and base name in Korea where he was stationed during the alleged in-service stressor. The RO must notify the Veteran that it is his responsibility to cooperate in the development of the claims. The consequences for failure to cooperate may include denial of the claim. 38 C.F.R. § 3.158 (2015). Based on his response, the RO must attempt to procure copies of all records which have not previously been obtained from identified treatment sources. 

2. The RO must forward the Veteran's statements of his alleged in-service stressor, as well as copies of his service personnel records and any other relevant evidence to the JSRRC and any other record repositories as the RO deems necessary to: 

(a) determine the specific locations in Korea, to include city, province, and base name, of the 1/17th 2nd Infantry Division between April 1984 and April 1985. 

(b) verify whether a serviceman named Kenny or anyone from the 1/17th 2nd Infantry Division was killed as contended by the Veteran between April 1984 and April 1985.
 
The RO must inform the JSRRC that if there are no records to confirm or deny the alleged in-service stressor, or if there are no unit history records to provide specific details regarding the city, province, or base name in Korea, the records repository must provide written documentation to the RO to that effect. 

Thereafter, only if unit history records are obtained as requested and/or if the Veteran provides the information required by this remand, and if the alleged in-service stressor is not confirmed by the JSRRC, the RO must forward this information, as well as copies of his personnel records to the U.S. Army Crime Records Center to verify whether a serviceman named Kenny or anyone from the 1/17th 2nd Infantry Division was killed as contended by the Veteran between April 1984 and April 1985. The RO must inform the U.S. Army Crime Records Center that if there are no records to confirm or deny the alleged in-service stressor, the records repository must provide written documentation to the RO to that effect.

3. If, and only if, the RO determines that the evidence corroborates the Veteran's statements of the alleged in-service stressor, the Veteran must be afforded a VA psychiatric examination to determine whether any currently or previously diagnosed psychiatric disorder, to include adjustment disorder with depressed mood and depression, is related to service. All pertinent symptomatology and findings must be reported in detail. Any indicated diagnostic tests and studies must be accomplished. The Veteran's electronic claims file must be made available to an appropriate examiner, and the examiner must indicate that these records have been reviewed. 

The RO must specify for the examiner the stressor that it has determined is established by the record. Based on a clinical examination, a review of the evidence of record, and with consideration of the Veteran's statements, the examiner must state whether any currently or previously diagnosed psychiatric disorder, to include adjustment disorder with depressed mood and depression, is related to service, to include as due to any verified stressor. 

A complete rationale for all opinions must be provided. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner.

4. The RO must notify the Veteran that it is his responsibility to report for any examination scheduled and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2015). In the event that the Veteran does not report for the aforementioned examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

5. The RO must review the examination report to ensure that it is in complete compliance with the directives of this Remand. If the examination report is deficient in any manner, the RO must implement corrective procedures.

6. After completing the above actions, and any other development indicated by any response received as a consequence of the actions taken above, the RO must re-adjudicate the issue on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative must be furnished a supplemental statement of the case and given the requisite opportunity to respond before the case is returned to the Board for further appellate action.
 
No action is required by the Veteran until he receives further notice; however, he may present additional evidence or argument while the case is in remand status at the RO. Kutscherousky v. West, 12 Vet. App. 369 (1999).



_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).